IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HENRI JEAN-BAPTISTE  :
:
:
v.  :  Civil No. CCB-13-2829
:
:
SAXON MORTGAGE SERVICES, INC, *et al.* :

## MEMORANDUM

Plaintiff Henri Jean-Baptiste sues Saxon Mortgage Services, Inc. ("Saxon"), Meritech Mortgage Services, Inc. ("Meritech"), Deutsche Bank Trust Company Americas ("Deutsche Bank"), Stone Title, and John Burson for claims arising out of the foreclosure of real property located in Lanham, Maryland. Deutsche Bank filed a motion to dismiss, raising, among other arguments, the *Rooker-Feldman* doctrine. Saxon joined in Deutsche Bank's motion, and moved to dismiss Jean-Baptiste's amended complaint.[1] For the reasons stated below, the court will remand Jean-Baptiste's case to state court.

## BACKGROUND

Jean-Baptiste's amended complaint alleges the following. In 1998, Jean-Baptiste bought 6443 Brightlea Drive, Lanham, Maryland 20706 ("Property") with a mortgage from Option One. (Compl. ¶ 3.) On September 23, 2005, Jean-Baptiste refinanced the Property through Saxon with a fixed-rate loan of $311,200 with a 7.3% interest rate. (Compl. ¶ 4.) Early in August 2006, Jean-Baptiste sought a second refinancing from Saxon. (Compl. ¶ 5.) He was told the interest rate on the new loan would be 8.050%. (*Id.*) At closing on August 21, 2006, however, he learned that the interest rate would be 9%. (Compl. ¶ 6.) He nonetheless signed the

---

[1] Saxon notes in its motion to dismiss that Meritech formally changed its name to "Saxon Mortgage Services, Inc." on April 9, 2002, before Jean-Baptiste had any involvement with Meritech. Saxon seeks dismissal of the entire amended complaint as against Meritech.

1

paperwork, in part because the settlement attorney told him he could rescind the loan within three days. (*Id.*) The new loan was to include a $31,694.86 payment to Jean-Baptiste. (*Id.*)

Two days after the new loan's closing, on August 23, 2006, Jean-Baptiste called Saxon to cancel the loan. (Compl. ¶ 7.) A Saxon agent instructed him to fax a Notice of Right of Rescission indicating that desire. (*Id.*) He did so, and immediately called Saxon to confirm the fax had been received. (*Id.*) Believing he had rescinded the new refinancing, Jean-Baptiste did not return to the settlement company to sign a certificate of confirmation or pick up his check for $31,694.86. (Compl. ¶ 8.) The settlement company never contacted him again. (*Id.*) Jean-Baptiste continued to make payments on the first loan for the months of August, September, October, and November of 2006—all of which Saxon accepted. (*Id.*)

In November 2006, Saxon called Jean-Baptiste and told him he was late on the new loan, which apparently had not been cancelled. (Compl. ¶ 9.) Jean-Baptiste told Saxon that he believed the new refinancing had been rescinded and that he was current on his old loan. (*Id.*) On December 19, 2006, Jean-Baptiste received a letter from Saxon that referenced the new loan and acknowledged that he disputed its existence. (Compl. ¶ 10.) But Saxon did not follow up with Jean-Baptiste on this dispute. (*Id.*)

Because of Jean-Baptiste's default, Deutsche Bank initiated foreclosure proceedings in the Circuit Court for Prince George's County. (Compl. ¶ 12.) Worried that he would lose the Property, Jean-Baptiste filed for bankruptcy under Chapter 13 on February 28, 2007. (*Id.*) This first petition was dismissed without a discharge. (*Id.*) On December 22, 2008, Jean-Baptiste refiled for bankruptcy under Chapter 13. (Compl. ¶ 13.) On April 23, 2009, that bankruptcy proceeding was converted to a Chapter 7 proceeding. (*Id.*) The bankruptcy court later discharged Jean-Baptiste's debts. (*Id.*)

Deutsche Bank's substitute trustee reinstituted foreclosure proceedings, and the Property was sold in a foreclosure sale on July 10, 2009. (Compl. ¶ 14.) On December 18, 2009, Jean-Baptiste filed a motion challenging ownership to prevent the court from ratifying the sale. (*Id.*) The court overruled Jean-Baptiste's exceptions and issued an order ratifying the sale on February 23, 2010. (*Id.*) On February 25, 2010, Jean-Baptiste filed an appeal of that order, which the Court of Special Appeals affirmed through an unreported opinion issued on April 2, 2012. (Compl. ¶ 15.) In its opinion, the Court of Special Appeals held both that the circuit court had not erred in finding that Jean-Baptiste had "never legally rescinded the loan" under TILA and that his "exceptions to the foreclosure sale were not timely filed." (Deutsche Bank Mot. Dismiss Ex. H, *Jean-Baptiste v. Burson*, No. 2940, slip op. at 9 (Md. Ct. Spec. App. Apr. 2, 2012) (unreported), ECF No. 24-9.)[2]

Jean-Baptiste filed this action in the Circuit Court for Prince George's County on February 15, 2013, and filed an amended complaint on September 6, 2013. Jean-Baptiste's amended complaint alleges violations of the Truth in Lending Act ("TILA"), the Maryland Consumer Protection Act ("MCPA"), and the Real Estate Settlement Procedures Act ("RESPA") as well as wrongful foreclosure and breach of fiduciary duty. All of these claims were mentioned in Jean-Baptiste's Court of Special Appeals appellant brief. (*See* Saxon's Mot. Dismiss Ex. 3, Jean-Baptiste's Appellant Br. 7-13, ECF No. 30-4.) Deutsche Bank removed this action to this court on September 25, 2013. Deutsche Bank and Saxon filed motions to dismiss on October 2, 2013, and December 16, 2013, respectively.

**ANALYSIS**

---

[2] Although Jean-Baptiste did not attach this opinion to his complaint, this court may take judicial notice of it, both because it is a matter of public record and because it is attached to a motion to dismiss and is "integral to the complaint and authentic." *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Both Deutsche Bank and Saxon have raised the *Rooker-Feldman* doctrine as a bar to Jean-Baptiste's present lawsuit.  "Because the *Rooker-Feldman* doctrine is jurisdictional," *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002), the court addresses this issue first.  Under the *Rooker-Feldman* doctrine, "'lower federal courts generally do not have [subject-matter] jurisdiction to review state-court decisions.'" *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 857 (4th Cir. 2001) (alteration in original) (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)).  The doctrine "precludes not only review of adjudications of the state's highest court, but also the decisions of its lower courts." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 (4th Cir. 1997).  "The *Rooker-Feldman* bar extends not only to issues actually decided by a state court but also to those that are 'inextricably intertwined with questions ruled upon by a state court.'" *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004) (quoting *Plyler*, 129 F.3d at 731).  A federal claim is "inextricably intertwined" if "success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Id.* (quotation marks omitted).  In short, the *Rooker-Feldman* doctrine holds that "'[a] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court . . . .'" *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

Here, Jean-Baptiste seeks to have this court "sit in review of a [Maryland] state court that has already ruled on" Jean-Baptiste's claims. *Friedman's, Inc.*, 290 F.3d at 196.  Jean-Baptiste asks this court to review issues that were already actually decided by the Maryland courts.  Specifically, the Maryland Court of Special Appeals affirmed the circuit court's determination that Jean-Baptiste never legally rescinded the loan under TILA and that therefore the foreclosure was proper.  Because the Court of Special Appeals actually decided Jean-Baptiste's TILA claim,

it is clearly barred by *Rooker-Feldman*. The only remaining federal claim is the one brought under RESPA. Assuming this claim was not actually decided, it was still inextricably intertwined with the foreclosure issue already decided by the Maryland courts because a decision by this court to grant relief on Jean-Baptiste's RESPA claim would require this court to "take an action that would negate the state court's judgment" that the foreclosure sale was proper. *In re Knapper*, 407 F.3d 573, 581 (4th Cir. 2005) (quoting *Walker v. Horn*, 385 F.3d 321, 330 (3d Cir. 2004)). Under *Rooker-Feldman*, this court cannot do that; Jean-Baptiste's RESPA claim is also barred.[3]

Because this court lacks subject matter jurisdiction over the claims on which removal was based, the case must be remanded. *See* 28 U.S.C. § 1447(c).

## CONCLUSION

The *Rooker-Feldman* doctrine bars Jean-Baptiste's federal TILA and RESPA claims, and the court therefore lacks subject matter jurisdiction over this removed case. Accordingly, the court will remand this case to state court.

A separate Order follows.

    1/13/2015　　　　　                                  　　　　/s/　　　　　　　　　　
　　　Date　　　　　　　　　　　　　　　　　　　　　　　　　Catherine C. Blake
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] Even assuming a decision by this court to grant relief on Jean-Baptiste's RESPA claim would not necessarily require a finding that the Maryland courts wrongly decided the issues before it, *Rooker-Feldman* would still bar his RESPA claim. In his appeal, Jean-Baptiste listed, almost word for word, the five claims he brings in this lawsuit. Jean-Baptiste "undeniably enjoyed a reasonable opportunity to raise [his] [RESPA] claim in state court [and] *Rooker-Feldman* requires no more." *Brown & Root, Inc.*, 211 F.3d at 202.